# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL G. MINNER,<br><br>      Petitioner,<br>v.<br><br>MIKE E. POULOS, Warden,<br><br>      Respondent. | Civil No. 07cv807 W (NLS)<br><br>**REPORT AND RECOMMENDATION RE: RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 6] |

Respondent filed a motion to dismiss this petition for writ of habeas corpus (petition). The Court has reviewed the record, and for the following reasons, **RECOMMENDS** that the District Court **FIND** this is a "mixed" petition, that is, one that contains exhausted and unexhausted claims, and notify Petitioner that he should inform this Court how he chooses to proceed with his mixed petition.

## PROCEDURAL BACKGROUND

Darryl G. Minner (Minner or Petitioner) is a California prisoner serving a fifty-two month sentence for a conviction for second degree robbery, attempted second degree robbery and willful evasion of a police officer with reckless driving. Minner appealed his conviction, and on February 7, 2006, the Fourth Appellate District, Division One, affirmed the judgment. Lodgment Nos. 2, 4, 5. Minner then filed a petition for review. Lodgment 6. The California Supreme Court denied the petition on April 26, 2006, but stated the denial was "without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in *Cunningham v. California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543 U.S.

220, on California law."

Minner filed this federal petition under 28 U.S.C. § 2254 alleging these claims: (1) due process violation based on trial court's exclusion of a videotape of Petitioner's pre-arrest interview with police; (2) ineffective assistance of counsel based on trial counsel's failure to get the videotape referenced in claim one admitted; (3) violation of rights to due process and a jury trial based on trial court's jury instruction on the statutory presumption of "willful or wanton disregard;" and (4) violation of rights to due process and a fair trial based on the trial court sentencing Petitioner to consecutive terms using an improper standard of proof.

The Court provided Petitioner notice regarding a possible failure to exhaust his claims and explained that under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), a petition containing an unexhausted claim must be dismissed. [Doc. No. 3.]   The Court advised Petitioner that if he thought his petition contained any unexhausted claims, he should either file a request to dismiss the unexhausted claim(s) and proceed with only the exhausted claim(s), or, file a request to dismiss this case without prejudice so that he could go to state court to exhaust any unexhausted claim(s).

Respondent filed a motion to dismiss and advanced the single argument that the Court should dismiss the petition because it is a mixed petition.  Alternatively, Respondent asks the Court to allow Petitioner to amend his petition to delete the unexhausted claims, or hold the petition in abeyance while Petitioner returns to state court to exhaust his unexhausted claims.  Despite this Court having given Petitioner a second opportunity to file an opposition to the motion to dismiss, Petitioner never filed one.

## **RELEVANT FACTS**[1]

**A.     The Attempted Robbery, Robbery and Police Chase.**

Early in the morning of Sunday, March 28, 2004, a Black male wearing a tan beanie cap, dark pants and a thick, blue, down jacket entered a restaurant in National City and threatened to harm the cashier if she did not give him all of the money out of the register.  When the restaurant cook yelled at the man to leave, he exited the restaurant without any money.

---

[1] This Court quotes largely verbatim an excerpt from the factual background of the California Court of Appeal's opinion.  Lodgment 5 at 2-5.  *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir 2001) (paraphrasing facts from the state court opinion).

1    The same morning, a man fitting a similar description, with his hand inside his jacket, ordered a
2 cashier at a nearby gas station to "[o]pen the cash register or I'm going to shoot you."  When the cashier
3 did not comply, the man grabbed the cashier's cell phone and fled.  After seeing the man drive away in a
4 white car, the cashier flagged down two police cars.

5    Sergeant Matthew Smith pursued the white car, which drove at a high speed through a residential
6 area.  The man got out of the white car and ran toward a house.  He jumped over a three-foot wall in the
7 front yard and ran into a backyard that was enclosed by a six-foot fence topped with spikes.  Sergeant
8 Smith did not pursue the man into the backyard.  The man apparently scaled the backyard fence and was
9 not apprehended despite police attempts to secure the area.

10   Police determined that the white car was registered to Minner.  It was impounded, and Minner's
11 wallet was found under the driver's seat.  The car contained a tan beanie cap and the gas station
12 cashier's cell phone.  There was no evidence of a forced entry into the car or any tampering with the
13 ignition.

14   The gas station cashier picked Minner out of a photographic lineup but could not identify him at
15 trial.  The restaurant cashier and cook did not identify Minner in a photographic lineup but later,
16 however, identified Minner at trial.  Sergeant Smith was not able to identify Minner at trial and was not
17 able to identify him in a photographic lineup, but stated that if he "had to pick one" photograph, he
18 would pick Minner's.

19   Minner's DNA was not identified in two hairs found inside the beanie cap.  Three fiber cuttings
20 from the beanie cap contained DNA from at least two different people, neither of whom was Minner.  A
21 fourth fiber cutting contained DNA from at least three people, and Minner could not be ruled out as a
22 contributor.

23   **B.    Minner's Testimony**.

24   Minner testified that he spent Friday evening, March 26, 2004, to Monday afternoon March 29,
25 2004, at the home of an intimate female acquaintance whom he had met a month earlier.  Minner
26 explained that he took public transportation to meet the woman and left his car in a parking space at his
27 apartment complex.  Minner testified that he usually leaves his wallet in his car under the seat because
28 he does not carry cash in it and it is too bulky to carry around, but he wants to be sure he has the wallet

when he is driving.

According to Minner, before he arrived home on March 29, he found out from his mother, whose residence he used as a mailing address, that the police had stopped by her house to report that they had his car. Minner called the police several times over the next few days about his car and was eventually connected with Detective Estella Cordero, who was assigned to his case. She told him that the car had been used in a crime and she would let him know when it was ready to pick up.

Approximately a week later, Detective Cordero called Minner to tell him he could pick up his car. Detective Cordero interviewed Minner when he arrived, and the interview was recorded on videotape. Minner was arrested after the interview.

### C.     **Evidence of Minner's Disabilities.**

At trial, Minner testified that he could not have run away from a police officer, jumped a three-foot fence or scaled a six-foot fence because of his physical disabilities. Minner, who was 53 years old, explained that he became disabled with mental and physical impairments when he was badly beaten in 1985, that in the early 1990's he had suffered a gunshot to his leg and that other more recent injuries impaired his physical functioning. Minner further testified that he received disability payments and the assistance of an in-home caretaker, paid for by public assistance, because of his disabilities.

Other testimony confirmed Minner's disabilities. According to the testimony of Minner's long-time physician, Minner was disabled from a beating in the 1980's, which caused severe brain damage, and more recent injuries had further impaired Minner's mobility. Minner's physician testified that Minner was not able to scale or jump fences. Minner's mother testified that Minner had been left disabled after being badly beaten and that he moved around slowly. Minner's social worker testified that he had evaluated Minner and approved him for in-home domestic and personal care because of his disabilities. A maintenance worker from Minner's apartment complex, called in the prosecution's rebuttal case, testified that he had seen Minner performing physical tasks such as sweeping and yard work, but that Minner walked slowly and with a limp.

On rebuttal, the prosecutor asked Detective Cordero, "At any time during the interview, did Mr. Minner explain to you that he was on permanent disability and there's no way he could have committed these crimes?" She answered, "No."

### D. Exclusion of the Videotape.

After Detective Cordero's rebuttal testimony, defense counsel sought to introduce a videotape of Detective Cordero's interview of Minner because "[t]here is a lot of discrepancies [*sic*], obviously, between what my client testified to during that interview and this officer's testimony about it and I believe that she is incorrect in some of the things she's saying." Defense counsel made no specific offer of proof about the content of the videotape and did not identify any specific testimony by Detective Cordero that the videotape would refute. . . . The trial court denied defense counsel's request to introduce the videotape because defense counsel had failed to provide a transcript of the videotape as required by [California Rules of Court,] rule 243.9.

## DISCUSSION

### A. Legal Standard.

Before filing a federal habeas petition, a prisoner in state custody pursuant to a state court judgment must first exhaust state judicial remedies through either a direct appeal or collateral proceedings. *See* 28 U.S.C. § 2254(b),(c). The prisoner must provide the highest state court available with a fair opportunity to rule on the merits of each and every issue he or she seeks to raise in federal court. *See Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). The petitioner has the burden of pleading exhaustion in the federal habeas petition. *See Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir.1981) (citations omitted).

If a petitioner files a mixed habeas petition, a court must dismiss the entire petition without reaching the merits of any of its claims. *Rose*, 455 U.S. at 522; *Guizar v. Estelle*, 843 F.2d 371, 372 (9th Cir. 1988). Dismissal is to be with leave to amend to delete the unexhausted claims; if they are deleted, the court can then consider the remaining claims. *Rose*, 455 U.S. at 520; *see Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000). In addition, a court may (1) deny the petition even if it is partly or entirely unexhausted if it fails to raise even a colorable federal claim; or (2) stay a mixed petition to allow the petitioner to return to state court to exhaust the unexhausted issue or issues. 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations to federal habeas petitions concerning a state court judgments. 28 U.S.C. § 2244(d)(1). The

interplay of this requirement, along with the exhaustion requirement, created a problem for petitioners filing mixed petitions because the statute of limitations often precluded petitioners from obtaining federal review of the unexhausted claims. *See generally Rhines*, 544 U.S. 269. In *Rhines*, the Supreme Court resolved this problem by approving a procedure whereby a district court, in its discretion, could "stay [a] petition and hold it in abeyance while [a] petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* at 1534. But because a stay and abeyance has the potential to frustrate AEDPA's dual purposes of encouraging finality of state court judgments and creating incentives for petitioners to seek relief in state court first, the Supreme Court also stated that the "stay and abeyance should be available only in limited circumstances." *Id.* at 1534-35.

Thus, under *Rhines*, the stay and abeyance of a mixed petition is appropriate when the district court determines (1) "there was good cause for petitioner's failure to exhaust his claims in state court;" (2) the unexhausted claims are not "plainly meritless;" and (3) "reasonable time limits are placed on a petitioner's trip to state court and back." *Id.* "[I]t is error for a district court to dismiss a mixed habeas petition without first offering the petitioner the options provided in *Rose v. Lundy*, 455 U.S. 509 (1982)." *See Jefferson v. Budge*, 419 F.3d 1013, 1014, 1016 (9th Cir. 2005); *see also Rhines*, 544 U.S. at 278 ("[I]f a petitioner presents a district court with a mixed petition ... the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to habeas relief").

**B.    Analysis.**

**1.    Claim One for Relief.**

In his first claim, Minner argues the trial court violated his due process rights and California Evidence Code section 356 by excluding the videotape of his pre-arrest interview with police. Pet. at 6. When Minner asserted this claim to the California Supreme Court, he framed it by arguing he "was prejudiced by trial counsel's failure to make an offer of proof or provide a transcript of videotaped evidence that would have rebutted the prosecutor's accusation that petitioner fabricated his defense evidence." Lodgment 6 at 12-17.

A claim for ineffective assistance of counsel for an act or omission by counsel is separate from the substantive issue that the act or omission raises. *Kelly v. Small*, 315 F.3d 1063, 1068 n.2 (9th Cir.

2003) (holding that while petitioner exhausted a claim for ineffective assistance based on counsel's failure to object to alleged prosecutorial misconduct, the petitioner did not exhaust a related claim premised on counsel's failure to file a motion to recuse the prosecutor based on that same misconduct). Here, Minner exhausted claim 2 of his petition alleging ineffective assistance of counsel based on counsel's failure to get the videotape admitted. Claim one–alleging that the trial court violated his due process rights by failing to admit the videotape–is a separate claim that he did not raise in the California courts. Therefore, this Court recommends finding that Minner did not exhaust claim one of his habeas petition.

### 2. Claim Three for Relief.

In claim three, Minner claims the trial court violated his fifth, sixth and fourteenth amendment rights to due process and a jury trial by instructing the jury on the statutory presumption of "willful or wanton disregard" in Vehicle Code section 2800.2. Pet. at 8. In his petition for review, Minner framed this issue as "the Court of Appeal misconstrued Vehicle Code section 2800.2" by creating a conclusive presumption. Lodgment 6 at 4, 5-12. Because Minner only challenged the Court of Appeal's interpretation of Vehicle Code section 2800.2–and not the trial court's instruction to the jury using the presumption in that statute–he did not raise claim three to the highest state court. Therefore, this Court recommends finding that Minner did not exhaust claim three of his habeas petition.

### CONCLUSION

This Court **RECOMMENDS** that the District Court find the petition to be a mixed petition with exhausted and unexhausted claims, and allow Petitioner choose whether to: (1) amend the petition to delete the unexhausted claims; (2) dismiss this action and return to state court to exhaust all claims, then file a new federal petition with all those claims; or (3) file a motion to stay these proceedings while he exhausts his unexhausted claims. This Court also **RECOMMENDS** that the District Court notify Petitioner that if he does not inform the Court by the stated deadline of his intent with how to proceed, the Court will dismiss his petition in its entirety.

**IT IS ORDERED** that no later than *January 8, 2008*, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

1 **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
2 served on all parties no later than ***January 22, 2008***.  The parties are advised that failure to file
3 objections within the specified time may waive the right to raise those objections on appeal of the
4 Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

5 **IT IS SO ORDERED**.

6 DATED:  December 17, 2007

*[signature]*
Hon. Nita L. Stormes
U.S. Magistrate Judge